IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MANNI MUHAMMAD RAHMAN, | ) | CASE NO. 1:15 CV 233 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| GRAFTON CORRECTIONAL | ) | |
| INSTITUTION, *et al.*, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

## Introduction

Before me on referral[1] is the matter of Manni Muhammad Rahman's *pro se* complaint against all correctional officers employed with the Ohio Department of Rehabilitation and Correction ("DRC") at the Grafton Correctional Institution ("GCI") alleging that they violated his First Amendment Rights to exercise his religion.[2]   Judge Boyko initially dismissed several parties and claims in his Order permitting only Rahman's First Amendment claims against Officers Grima, Holzhauer, and Pletcher to proceed.[3]  Defendants have filed a motion for summary judgment.[4]  Rahman has not filed an opposition. For the following reasons I will recommend that the motion be granted.

---

[1] The matter has been referred to me under Local Rule 72.2 by United States District Judge Christopher A. Boyko for pretrial supervision on July 23, 2015.

[2] ECF # 1.

[3] ECF # 6.

[4] ECF # 36.

## Facts

Judge Boyko set out the following facts in his Memorandum Opinion and Order dated

July 23, 2015:

> On November 5, 2014, the Plaintiff was sent from religious services by the "Imom" [sic] to eat early before evening prayer.  He was stopped by Officer Holzhauer, who asked what P.O.D. he was from.  The Plaintiff explained that the Imam sent the Muslims to eat dinner before prayer, as he does every Wednesday.
>
> Officer Holzhauer allegedly responded:
>
>> "It's Not My Fault You Picked The Wrong Religion.  Your Imom [sic] Kamal, OR Whatever He Is Don't Run NOTHING WE DO!  Tell Him the Next Time You See Him, That I Said DON'T Be Sending His Jailhouse Muslims Over Here."
>
> Officer Holzhauer then sent the Plaintiff back to his housing unit.
>
> The Plaintiff reported this incident to Sergeant Pletcher, who saw it "as FUNNY." He tried to report it to Lt. Lottman, who did not think it happened.  Also, he reported it to Deputy Warden Hills, who told the Plaintiff he was going to do something about it.
>
> On November 7, 2014, the Plaintiff was sitting in the chow hall for about five minutes when Officer Holzhauer approached him and told him to throw away his food. When the Plaintiff asked why, Officer Holzhauer told him that Officer Lottman saw him going through the line twice.  The Plaintiff denied this and told Officer Holzhauer he is a Muslim and is not allowed to steal.  Officer Holzhauer, however, became angry, asked the Plaintiff whether he was calling them liars and then took the Plaintiff to the front of the chow hall and made him throw away his food.  The Plaintiff was then cuffed and sent for disciplinary action.  Officer Holzhauer stated as the Plaintiff was being taken away, "ONE Jailhouse Muslim To Go!"[5]

---

[5] The Plaintiff alleges he suffered severe "mental breakdowns" as a result of the conduct of GCI Correctional Officers and tried to take his own life on November 10, 2014. He contends the Officers "get away with" punishing him after they make religious

-2-

On November 28, 2014, while he was housed in segregation, he asked Officer Grima to escort him to religious services.  Officer Grima and Sergeant Pletcher refused this request because the Plaintiff did not have a pass, even though both know knew Deputy Warden Hill and Mr. Weishar "let it be known to the officers" that inmates are allowed to go to religious services without a pass. For instance, the Plaintiff alleges he was permitted to go to religious services without a pass the night before.  When the Plaintiff tried to explain this to Sergeant Pletcher and told the Sergeant he had right to go to religious services on his "Religious Right (Day)," Sergeant Pletcher allegedly responded that he didn't care what anybody said or what the day was called and stated, "you AIN'T Going!"  The Plaintiff was then taken to segregation for twenty-two days.

One of the officers working in segregation was Officer Krupa, who began telling jokes to try and make other officers laugh. In so doing, Officer Krupa made fun of the Plaintiff's religion by asserting that the reason the Plaintiff could not get along with GCI staff was because "Muslims Say That ALL White People Are The White Devils" while making devil signs with his hands.[6]

## Analysis

### A.    Standard of review

### *1.    Summary judgment*

The court should grant summary judgment if satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7] The moving party bears the burden of showing the absence of any such "genuine issue":

---

statements to him that provoke him into reacting. He further alleges that his grievances and requests for a lawyer have repeatedly been denied, and that thirteen of his family pictures have "turn[ed] up missing" from one of his many trips to segregation.

[6] ECF # 6 at 1-3.

[7] Fed. R. Civ. P. 56(c).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[8]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[9] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[10] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[11]

The court should not grant summary judgment if a party who bears the burden of proof at trial does not establish an essential element of his case.[12] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[13] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[14]

---

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56©).

[9] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[10] *Id.* at 252.

[11] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[12] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[13] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[14] *Anderson*, 477 U.S. at 249-50 (citation omitted).

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."[15] But if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[16]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[17] The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[18] The text of Fed. R. Civ. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[19]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has

---

[15] *Id.* at 252.

[16] *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

[17] *Anderson*, 477 U.S. at 256.

[18] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[19] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

concurred that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"[20] Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[21]

But the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[22]

As a general matter, the judge considering a motion for summary judgment need examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[23] The court will not consider non-material facts, nor will it weigh material evidence to

---

[20] *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

[21] *Id.* at 225-26 (citations omitted).

[22] *Id.* at 226 (citations omitted).

[23] *Anderson*, 477 U.S. at 248.

determine the truth of the matter.[24] The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[25]

In sum, proper summary judgment analysis entails:

the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[26]

## B.    Application of standard

### 1.    *Plaintiff failed to exhaust his administrative remedies under the PLRA because he did not complete each step of the inmate grievance procedure in accordance with the Ohio Revised Code*

Defendants argue that Rahman's 42 U.S.C. § 1983 free exercise claim should be dismissed pursuant to 41 U.S.C. § 1915e(a) because he failed to exhaust his administrative remedies before filing.[27]

The Prison Litigation Reform Act ("PLRA") states:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a).

---

[24] *Id.* at 249.

[25] *Id.*

[26] *Id.* at 250.

[27] ECF # 36 at 7.

The requirement to exhaust administrative remedies is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences."[28] Thus, exhaustion under the PLRA requires that a prisoner comply with all procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process.[29]

Defendants maintain that Rahman failed to exhaust the jail's grievance process.  As part of this process, Rahman was required to pursue three separate steps of the inmate grievance procedure, but the uncontroverted evidence has shown that he only completed the first.  To that end, the evidence is that Rahman filed an Informal Complaint Resolution ("ICR") regarding the November 7, 2014 incident the same day.[30]  He received a response three days later.  He did not continue on to file a Notification of Grievance ("NOG") or Appeal.[31]  Plaintiff filed an ICR regarding the November 28, 2014 incident the same day.[32]  He received a response three days later.  Again, he did not continue on to file a NOG or

---

[28]  *Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

[29] *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

[30] ECF # 36, Attachment 1 at 8-15.

[31] *Id.*

[32] *Id.*

Appeal.[33] Ten months later he filed a NOG, but not as a follow-up to either ICR mentioned above, and it was denied on that basis.[34]   Rahman never pursued the Appeal step of the grievance procedure and therefore failed to exhaust all of his administrative remedies, thus mandating dismissal under the PLRA.

An inmate's failure to comply with the time limits established by the inmate grievance procedure is grounds for dismissal of the complaint.[35]  Additionally, filing an informal complaint and a grievance without filing an appeal to the Office of the Chief Inspector does not exhaust an inmate's administrative remedies under the PLRA; "[t]he exhaustion requirement means that all administrative remedies must be exhausted."[36]  An Ohio prisoner may not file a complaint in federal court until he has filed a grievance using the Ohio inmate grievance procedure, the grievance has been acted on, and the prisoner has exhausted all of his administrative appellate rights with respect to the grievance.[37]  Further, an inmate will

---

[33] *Id*.

[34] *Id*.

[35] See *Harris v. Battle*, No. 1:12-CV-940, 2013 WL 5389240, at *4 (S.D. Ohio Sept. 25, 2013), adopted 2013 WL 5755416 (S.D. Ohio Oct. 23, 2013)(citing *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997)).

[36] *Leonard v. Mohr*, No. 2:11-CV-152, 2012 U.S. Dist. LEXIS 16434, at *10 (S.D. Ohio Feb. 9, 2012) (citing *Booth v. Churner*, 532 U.S. 731, 740-41 (2001)).

[37] *Id*. at *10 (citing *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997)); see also *Brown v. Warden, Ross Corr. Inst.*, No. 2:10-CV-822, 2012 U.S. Dist. LEXIS 115045, at *37-38 (S.D. Ohio Aug. 15, 2012) ("An inmate does not exhaust his remedies under § 5120-9-31 until he has received a decision in an appeal to the office of the Chief Inspector.").

still be subject to dismissal for failure to exhaust under the PLRA, where the prison finds his

claim both procedurally barred, such as untimely, as well as without merit.[38]

Defendants also raise the affirmative defense that they did not violate plaintiff's First

Amendment Rights, arguing that because their actions were isolated and plaintiff's own

exhibits obviate his cause of action proving defendants' actions were not religiously

motivated, but rather made in pursuit of the valid penological objective of institutional order

and security.  This asserted defense will not be addressed as such grievances were not

properly exhausted under PLRA.

## Conclusion

The evidence shows that plaintiff failed to exhaust his administrative remedies prior

to filing suit. As a result, I recommend that defendants' motion for summary judgment be

granted.

IT IS SO ORDERED.


Dated: January 8, 2018                               s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

---

[38] *See Vandiver*, 326 F. App'x at 889; *Hall*, 2010 WL 3070141 *2.

-10-

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[39]

---

[39] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).